# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge Raymond P. Moore

Civil Action No. 19-cv-00067-RM-NRN

DAVID L. HILDEBRAND, an individual,

    Plaintiff,

v.

WILMAR CORPORATION, a Washington corporation,

    Defendant.

---

# ORDER
---

    At issue is whether Defendant breached the Settlement Agreement between the parties. This matter is before the Court on the parties' cross motions for summary judgment. The motions are fully briefed and ripe for determination. After considering the motions, relevant parts of the court record, and the applicable law, and being otherwise fully advised, the Court finds and orders as follows.

    **I.    LEGAL STANDARD**

    **A.  SUMMARY JUDGMENT**

    Summary judgment is appropriate only if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Gutteridge v. Oklahoma*, 878 F.3d 1233, 1238 (10th Cir. 2018). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or is so one–sided

that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citation omitted). A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party. *Anderson*, 477 U.S. at 248.

When the court is presented with cross motions for summary judgment, it "must view each motion separately, in the light most favorable to the non-moving party, and draw all reasonable inferences in that party's favor." *United States v. Supreme Court of New Mexico*, 839 F.3d 888, 906–07 (10th Cir. 2016) (citations and quotations marks omitted). "'Cross motions for summary judgment are to be treated separately; the denial of one does not require the grant of another.'" *Christian Heritage Academy v. Oklahoma Secondary School Activities Ass'n*, 483 F.3d 1025, 1030 (10th Cir. 2007) (quoting *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979)).

In a summary judgment context, "federal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1171–72 (10th Cir. 1979); *see also Eden v. Voss*, 105 F. App'x 234, 240 n.6 (10th Cir. 2004) (recognizing district court may take judicial notice of pleadings in another case). "[A] court may [also]: consider stipulations, concessions of counsel, transcripts, exhibits and

other papers…; take judicial notice, whether requested or not (Fed. Rules Evid. Rule 201, 28 U.S.C.A.) of its own records and files, and facts which are part of its public records." *St. Louis Baptist Temple, Inc.*, 605 F.2d at 1172. "And, generally, that which may be judicially noticed need not be pleaded." *Id.*[1]

### B. *PRO SE* PARTY

The Court construes Plaintiff's filings liberally because he proceeds *pro se*.[2] *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). Nonetheless, the Court does not serve as Plaintiff's advocate, *see Gallagher v. Shelton*, 587 F.3d 1063, 1067 (10th Cir. 2009), and Plaintiff is required to follow the same procedural rules as counseled parties. *See Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008) ("*Pro se* status 'does not excuse the obligation of any litigant to comply with the fundamental requirements of the Federal Rules of Civil and Appellate Procedure.'" (citation omitted)).

## II. BACKGROUND

Plaintiff is the owner of U.S. Patent No. 5,737,981 (the "'981 Patent"). Plaintiff has filed at least three actions involving Defendant concerning the '981 Patent. One in 2009, one in 2017, and the current action before this Court. The Court starts with the first action.

In 2009, Plaintiff filed a patent infringement action against Defendant (the "2009 Action"). The parties settled that lawsuit as set forth in their Settlement Agreement (the

---

[1] Under Fed. R. Evid. 201(e), "[o]n timely request, a party is entitled to be heard on the propriety of taking judicial notice and the nature of the fact to be noticed." As relevant here, Plaintiff relies on Civil Action No. 17-cv-02821, previously filed in this District, in his response to Defendant's Motion for Summary Judgment. Defendant addresses this action in its reply brief. No party raises any objections concerning the Court's consideration of that action.
[2] Plaintiff's attorneys were granted leave to withdraw on April 30, 2019, prior to the filing of the papers at issue before the Court.

"Agreement") dated March 2, 2009 concerning the product covered by Plaintiff's patent (the "Covered Product"). As relevant here, the Agreement provides:

- Plaintiff would grant Defendant "a non-exclusive license for any future and-or continued sales of Products covered" under the '981 Patent (Section 1.2);

- Defendant would pay Plaintiff "an ongoing royalty in the amount of 15% of the Gross Selling Price of Products sold and covered" by the '981 Patent until the expiration of the patent on April 14, 2015 (Sections 2.1 & 2.7);

- Defendant would continue to pay Plaintiff "an ongoing reduced royalty/fee of 5% following the expiration of the ['981] Patent, under the terms of" the Agreement, unless the Agreement was terminated. (Sections 2.8 & 3.1);

- The royalties "shall be paid quarterly…and shall be accompanied by a report of gross sales of Products sold during the quarter being reported." (Section 2.9);

- Defendant "agrees to disclose the source of any outside manufacturing to product covered by the ['981] Patent"; to provide "upon request" "copies of invoicing" from such third-party in order "to verify the amount of product manufactured and/or sold" (Section 2.4); and

- Defendant "shall keep accurate records of its activities with respect to the sale of products under this [A]greement for the duration of said [A]greement" and Plaintiff "shall be permitted to inspect and or verify" the records, which includes the invoicing from third party manufacturers under Section 2.4 (Section 2.9).

Despite what the Agreement provides, it is undisputed the '981 Patent did not expire until September 20, 2015.

Defendant made quarterly payments to Plaintiff until September 20, 2015, but without providing any report of any type. Plaintiff nonetheless cashed Defendant's checks. Plaintiff's last *written* correspondence with Defendant concerning the Covered Product was in about 2011. Whether Plaintiff thereafter contacted Defendant by telephone, however, is disputed. According to Plaintiff, he continued to contact Defendant by *telephone* in the years that followed for

documentation on sales of the Covered Product.[3] Plaintiff called asking Defendant about the documentation of the sales "probably two or three times a year from there on out."[4] He called asking to inspect Defendant's records.[5] Plaintiff, however, was not provided the opportunity to go in and audit Defendant's records to determine whether the payments he received were accurate.[6] Defendant, however, provides a declaration that there is "no evidence"[7] that Plaintiff ever requested copies of invoices or an accounting between December 10, 2012 and September 20, 2015. Defendant, however, does not dispute – and provides no evidence to dispute – that it never provided any invoices or records to Plaintiff at any time during the term of the Agreement.[8]

What documents Defendant has, however, appear to be far and few between. According to Defendant, between December 10, 2012 through September 20, 2015, its customers received paper invoices, digital invoices, or electronic invoices through an electronic data interface. Defendant apparently does not have all these invoices. Instead, Defendant states that the records of the sales and returns of the Covered Product were kept on its inventory and accounting software, from which Defendant exported information and produced four Excel spreadsheets.

---

[3] The Court agrees with Plaintiff – Defendant's repeated statements or implications that Plaintiff last *contacted* Defendant in 2011, in reliance on when Plaintiff last *wrote* to Defendant, is disingenuous. Especially where Plaintiff *repeatedly* testified that he contacted Defendant by phone on numerous occasions. (ECF No. 63-11, 7:23-8:15, 9:3-8, 11:22-12:1, 14:14-25, 15:1-8, 51:12-20.)
[4] ECF No. 63-11, 9:3-8.
[5] ECF No. 63-11, 14:14-25.
[6] ECF No. 63-11, 20:11-24, 50:19-20.
[7] ECF No. 58 at ¶ 9. It is unclear what Defendant means. If Defendant is asserting that it found no *written* evidence, as its arguments appear to suggest, such is not required. After all, it can hardly be disputed that Plaintiff's deposition testimony constitutes admissible evidence.
[8] As discussed herein, Defendant did provide some documents after Plaintiff filed this action.

Each spreadsheet contains only four rows of figures, a representative part of the spreadsheet for the purported gross sales and returns for 2013 is set forth below:[9]

| CompNum | ItemNum | WhsID | Year | SlsAmt01 | SlsAmt02 | SlsAmt03 | SlsAmt04 | SlsAmt05 | SlsAmt06 | SlsAmt07 | SlsAmt08 | SlsAmt09… |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | M980 | 1 | 2013 | 6xxx.x | 5xxx.xx | 7xxx.xx | 8xxx.xx | 1xxxx.xx | 8xxx.xx | 9xxx.xx | 8xxx.xx | 8xxx.xx… |
| 1 | M980 | RT | 2013 | -4xx.xx | -1xx.xx | -3xx.xx | -3xx.xx | -3xx.xx | -4xx.xx | -2xx.xx | -5xx.xx | -3xx.xx… |

| CompNum | ItemNum | WhsID | Year | QtyArr01 | QtyArr02 | QtyArr03 | QtyArr04 | QtyArr05 | QtyArr06 | QtyArr07 | QtyArr08 | QtyArr09 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | M980 | 1 | 2013 | 1xxx | 9xx | 1xxx | 1xxx | 3xxx | 1xxx | 1xxx | 1xxx | 1xxx… |
| 1 | M980 | RT | 2013 | -8x | -3x | -7x | -6x | -7 x | -8x | -4x | -1xx | -5x… |

(ECF No. 58-1, p. 3.[10])

On November 22, 2017, Plaintiff filed another action against Defendant in this District, *Hildebrand v. Wilmar*, No. 17-cv-0281-PAB-SKC (the "2017 Action"). The claims were for patent infringement of the '981 Patent and an accounting of income Defendant earned as a result of such infringement. The 2017 Action was dismissed without prejudice based on improper venue under 28 U.S.C. § 1400(b) governing patent infringement cases; final judgment was entered on September 14, 2018. (2017 Action, ECF Nos. 30, 35, 36.) Plaintiff's appeal was voluntarily dismissed on December 28, 2018. (2017 Action, ECF No. 44.)

Meanwhile, Plaintiff filed this action on December 10, 2018 in state court where it was subsequently removed by Defendant based on diversity jurisdiction. The operative complaint alleges two claims: breach of contract and an accounting. Specifically, Plaintiff alleged Defendant failed to correctly and fully pay royalties and to provide supporting records of sales of

---

[9] Defendant's spreadsheet provides data for all 12 months. Due to formatting limitations, only the first nine months of 2013 are shown here. Nonetheless this fully sets forth the information Defendant provided for such months, as redacted by the Court. *See* n.10, *infra*.

Defendant contends these are its "sales reports." As no reports were provided with any of the payments, the Court need not reach what documentation would be sufficient to satisfy the requirement of "a report of gross sales" under Section 2.9 of the Agreement.

[10] The Covered Product is identified as product number M980. The nine columns each represent a month, from January through September. "SlsAmt" represents the dollar amount in sales for that month. "QtyArr" represents the quantity sold that month. "RT" represents the either the dollar amount or the quantity of returns for that month.

In order to protect Defendant's confidential pricing information, the Court has redacted some of the numbers by replacing each number omitted with an "x." For purposes of this Order, the actual numbers are irrelevant.

the Covered Products to determine exactly what is owed. After overruling Plaintiff's objections, based on the recommendation of the Magistrate Judge, by Order dated August 26, 2019, the Court granted Defendant's motion to dismiss to the extent it sought dismissal of Plaintiff's claimed damages for unpaid royalties after the expiration of the '981 Patent, i.e., September 20, 2015. The parties' cross motions for summary judgment followed.

### III. DISCUSSION

#### A. The Claim for Breach of Contract

In order to establish his claim for breach of contract, Plaintiff must establish (1) the existence of a contract; (2) performance by Plaintiff or some justification for his nonperformance; (3) Defendant's failure to perform the contract; and (4) Plaintiff suffered damages. *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992). In this case, Plaintiff alleges Defendant failed to perform in several respects under the Agreement. But, in order to determine the time period in which Defendant's performance (or failure to perform) is to be evaluated, the Court must start with the statute of limitations.

#### 1. The Statute of Limitations

***Which Date Applies?*** Defendant argues the statute of limitations is to be measured by the date in which this action was filed in state court – December 10, 2018. Plaintiff argues that the relevant period should be measured by his 2017 Action because he refiled this current action within 90 days of the dismissal of the 2017 Action and, therefore, the statute of limitations was "tolled" under C.R.S. § 13-80-111. Defendant counters that because this action is not the same as the 2017 action, § 13-80-111 does not apply. The Court agrees.

7

Under § 13-80-111, as relevant here, if a plaintiff's action is terminated because of improper venue, the plaintiff "may commence a new action upon the same cause of action within ninety days after the termination of the original action." But, as Defendant argues this action is not "a new action upon the same cause of action." The complaint in the 2017 Action did allege, as "background," that Plaintiff had filed the 2009 Action, that the parties had reached a settlement, and that Defendant had violated the settlement by failing to pay compensation and provide reports. Plaintiff's claims, however, were based on patent infringement, not breach of contract. Thus, § 13-80-111 does not apply and the applicable date to determine the running of the statute of limitations is December 10, 2018.

***Which statute applies?*** Section 13-80-101 provides that "[t]he following civil actions, regardless of the theory upon which suit is brought…shall be commenced within three years after the cause of action accrues, and not thereafter: (a) All contract actions…except as otherwise provided in section 13-80-103.5." Under Section 13-80-103.5, "[t]he following actions are to be commenced within six years…[a]ll actions to recover a liquidated debt or an unliquidated, determinable amount of money due to the person bringing the action…." Defendant assumes the six-year statute of limitations under C.R.S. § 13-80-101 applies to Plaintiff's allegations of breach based on Defendant's failure to pay royalties due under the Agreement. As to Plaintiff's allegations concerning Defendant's refusal to provide reports and records required under the Agreement, Defendant contends the three-year statute of limitations under C.R.S. § 13-80-101 applies to such alleged breaches. The Court finds otherwise.

To make its three-year vs. six-year argument, Defendant attempts to parse out the allegations but at bottom this action is to recover the royalties which are allegedly owed under

the Agreement; the documents which Plaintiff concomitantly seeks to obtain are those which would allow him to determine how much is owed under the Agreement and whether he has in fact been fully paid. Such royalties are either liquidated or determinable. *See Interbank Investments, L.L.C. v. Vail Valley Consol. Water Dist.*, 12 P.3d 1224, 1230 (Colo. App. 2000) (where nature of defendants' obligation is money owed, and the terms of the agreements contain the provisions for determining the amount owed, debt was sufficiently "determinable" for purposes of invoking § 13–80–103.5(1)(a)). Accordingly, the Court finds the six-year statute of limitations controls. Thus, the relevant period for consideration is from December 10, 2012 until September 20, 2015.

### 2. Defendant and the Breach of the Agreement

Both parties move for summary judgment on this claim.[11] These facts are undisputed: Defendant sent quarterly payments to Plaintiff; Plaintiff cashed the checks; and Defendant did not send reports of any kind with such payments. The following issues, however, are disputed:

- whether Plaintiff requested any reports or records during the relevant time period – Plaintiff testified he repeatedly did so but was denied or ignored while Defendant says it has "no evidence" that Plaintiff made any such requests; and

- whether the payments which Defendant made to Plaintiff amounted to "15% of the Gross Selling Price" of the Covered Product.

---

[11] The Court, construing Plaintiff's filing liberally, reads Plaintiff's motion to include arguments of not only Defendant's alleged failure to provide records but also why Defendant's alleged records show it did not and cannot demonstrate that it correctly and completely paid Plaintiff.

Defendant contends that its Excel spreadsheets and Plaintiff's cashing of the checks are sufficient to sustain its burden that it has substantially performed under the Agreement and that Plaintiff suffered no damages. The Court finds they do not show substantial performance.

For example, Defendant's spreadsheets were extracted from other records, but the Court finds that these abbreviated summaries fail to provide meaningful information to substantiate that all amounts due were in fact paid. As Plaintiff essentially counters, he should not have to rely on Defendant's say so. Indeed, under the Agreement, Defendant was required to accompany each payment with a "report of gross sales" but undisputedly did not do so, thereby precluding Plaintiff from verifying whether he was correctly and completely paid. And, the representative documents, redacted by Defendant, disclosed during this litigation also fail to substantiate that the payments made were complete and accurate. Further, contrary to Defendant's arguments premised on Plaintiff's alleged lack of requests, the Agreement contains no requirement that a request be made for the accompanying report of gross sales (§ 2.9) or that a *written* request be made for copies of invoicing or to inspect or verify records (§§ 2.4, 2.10). In summary, the Court finds Plaintiff has presented sufficient evidence to create a genuine dispute of material fact as to whether the payments made unaccompanied by a report of gross sales constitute "substantial performance" to preclude summary judgment. It also follows that there is a genuine issue of material fact as to whether Plaintiff has been damaged, i.e., fully paid.

Defendant's waiver argument fares no better. Defendant's argument here is that Plaintiff let nine years pass without acting before filing this lawsuit. The evidence on whether Plaintiff contacted Defendant, however, is disputed. Contrary to Defendant's assertion that Plaintiff "could not remember" if he ever contacted Defendant between 2011 and September 20, 2015,

Plaintiff testified repeatedly that he contacted Defendant by telephone over the years. Accordingly, Plaintiff's testimony is sufficient to create a jury question and summary judgment may be not be granted based on the doctrine of waiver.

### B. The Claim for an Accounting

Because this claim is tied to the breach of contract claim, it follows that summary judgment cannot be granted on this claim either. And, despite Defendant's argument to the contrary, the Court finds there is genuine issue of material fact as to whether whatever documents were produced to Plaintiff were sufficient to allow him to determine the amount of money which was due to him. On this record, Defendant's Excel spreadsheets before the Court, even if accompanied by a declaration, are insufficient.

### IV. CONCLUSION

Based on the foregoing, it is **ORDERED**

(1) That Defendant's Motion for Summary Judgment (ECF No. 55) is DENIED; and

(2) That Plaintiff's Motion for Summary Judgment (ECF No. 63) is DENIED.

DATED this 20th day of October, 2020.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge