# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge Raymond P. Moore

Civil Action No. 19-cv-00067-RM-NRN

DAVID L. HILDEBRAND, an individual,

    Plaintiff,

v.

WILMAR CORPORATION, a Washington corporation,

    Defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER OF JUDGMENT

    Plaintiff David L. Hildebrand and Defendant Wilmar Corporation have a rather contentious history. Mr. Hildebrand is the holder of a patent, now expired. After Mr. Hildebrand filed a patent infringement action against Wilmar, the parties entered into a Settlement Agreement. Claiming Wilmar violated the Settlement Agreement, Mr. Hildebrand brought this action, through counsel, alleging breach of contract and requesting an accounting. The Court issued orders narrowing the issues and setting the relevant time period for consideration in this case.[1]

    A bench trial was held on June 30 and July 1, 2021. Mr. Hildebrand appeared pro se because his counsel had withdrawn. Wilmar was represented by counsel. The Court heard testimony, received written evidence, and considered the parties' arguments. After closing arguments, the Court took the matter under advisement.

---

[1] ECF Nos. 46, 112.

The Court has examined the evidence, considered the parties' stipulations[2] and other filings, evaluated the credibility of the witnesses, and analyzed the law, and is otherwise fully advised. In accordance with Fed. R. Civ. P. 52(a), the Court's findings of fact, conclusions of law, and order of judgment are as follows.

I.  **FINDINGS OF FACT**

To the extent that any conclusions of law are deemed to be findings of fact, they are incorporated herein by reference as findings of fact.

*The parties.*

1.  Plaintiff David L. Hildebrand ("Mr. Hildebrand) is an individual and a citizen of the State of Colorado.

2.  Defendant Wilmar Corporation ("Wilmar") is a corporation incorporated and has its principal place of business in the State of Washington.

*The First Patent Infringement Action, Resulting Settlement, and Subsequent Confidentiality Agreement.*

3.  Mr. Hildebrand is the holder of Patent Number 5,737,981, issued April 14, 1998, titled "Removal Device for Threaded Connecting Devices" (hereafter, the "'981 Patent").

4.  In 2009, Mr. Hildebrand filed an action against Wilmar alleging it infringed on the '981 Patent.

5.  The parties settled that action and entered into a Settlement Agreement (the "Agreement") dated March 2, 2009.

---

[2] ECF No. 76, p. 10.

6. On February 22, 2011, the parties entered into a Confidentiality and Non-Disclosure Agreement (the "Confidentiality Agreement").[3]

7. The '981 Patent expired on September 20, 2015.

*The Second Patent Infringement Action.*

8. In 2017, Mr. Hildebrand filed another patent infringement action (the "Second Patent Action"), alleging Wilmar infringed the '981 Patent.

9. The Second Patent Action was dismissed, without prejudice, based on improper venue.

*This Breach of Contract Action.*

10. On December 10, 2018, Mr. Hildebrand filed this action for breach of contract and an accounting, alleging Wilmar violated the Agreement.

11. This action was filed in state court and removed by Wilmar to this Court based on diversity jurisdiction.

12. Wilmar filed a Motion to Dismiss. The Court accepted the Recommendation of the Magistrate Judge and granted in part Wilmar's Motion to Dismiss. The Court found that Section 2.08 of the Agreement is unenforceable and Mr. Hildebrand is barred from seeking damages for unpaid royalties after September 20, 2015, the '981 Patent's expiration date.

13. The parties filed cross motions for summary judgment. The Court denied both motions but held the relevant time period for consideration of royalty payments under the Agreement is limited to December 10, 2012 until September 20, 2015 based on the six-year statute of limitations and the '981 Patent expiration date.

---

[3] Trial Ex. 3.

14. The Court held a bench trial on June 30 and July 1, 2021 on Mr. Hildebrand's claim for breach of contract and related request for an accounting.

15. Post-trial, Mr. Hildebrand filed motions to amend his complaint to add a claim for patent infringement. By Order Denying Motions to Amend, issued concurrently with this Findings of Fact, Conclusions of Law, and Order of Judgment ("FOF"), the Court denied Mr. Hildebrand leave to amend.

### *The Terms of the Agreement.*[4]

16. The Agreement grants Wilmar a non-exclusive license to products (socket sets) covered under the '981 Patent.[5]

17. Section 2.3 of the Agreement states that "Wilmar agrees that it is currently only selling product private labeled under the following names; PERFORMANCE TOOLS, SUMMIT, and/or JEGS, and that any further private labeling must be disclosed to Hildebrand 30-days prior to said labeling."

18. Section 4.1 of the Agreement states that "Wilmar agrees that the only product currently being sold is a two (2) socket set, a/k/a part #M980, a/k/a "Emergency Lug Nut Remover Socket Set."

19. Mr. Hildebrand claims that Sections 2.1, 2.4, 2.8, 2.9, and 2.10 of the Agreement were breached by Wilmar.

20. Sections 2.1 and 2.7 of the Agreement provide that Wilmar will pay Mr. Hildebrand "an ongoing royalty in the amount of 15% of the Gross Selling Price of Products sold and covered" by the '981 Patent until the expiration of the patent on "April 14, 2015."

---

[4] Trial Exhibit A-7.
[5] Trial Ex. A-7 at Section 1.2.

21. The expiration date stated in the Agreement is incorrect; the '981 Patent expired on September 20, 2015.

22. Section 2.9 of the Agreement provides that the royalties "shall be paid quarterly, within thirty (30) days of the end of each quarter of a fiscal year, and shall be accompanied by a report of gross sales of Products sold during the quarter being reported."

23. Section 2.10 of the Agreement provides that "Wilmar shall keep accurate records of its activities with respect to the sale of products under this agreement for the duration of said agreement, and Hildebrand or a hired third party agent/accountant shall be permitted to inspect and or verify said records at any reasonable time during normal business hours. Said records are to include invoicing from third party manufacturers as indicated in section 2.4."

24. Section 2.4 of the Agreement provides that "Wilmar will disclose the source of any outside manufacturing of product covered by the Hildebrand Patent, and to provide upon request copies of invoicing from any said third party, to verify the amount of product manufactured and/or sold, if Hildebrand so requests."

25. The relevant period for Mr. Hildebrand's breach of contract claim is from December 10, 2012 until September 20, 2015.

***Sales of Covered Product and Payment to Mr. Hildebrand.***

26. During the relevant period, the only products, including private label products, Wilmar sold which were covered under the Agreement were labeled or sold under SKU[6] number "M980."

---

[6] "SKU" is short of "stock keeping number." *See Merriam-Webster.com* at https://www.merriam-webster.com/dictionary/SKU. It is a unique number or code assigned to a particular product.

27.     Since at least October 2012, Wilmar has kept its business records electronically. The Court finds the testimony of Wilmar's representatives to be credible and that Wilmar kept accurate business records for its sales of M980.

28.     During the relevant period, Wilmar sold approximately 81,000[7] of the M980 product. Wilmar's gross revenue for its sale of the M980 product is $435,589.00. The calculation of any royalty due under the Agreement is to be based on Wilmar's gross sales of the M980 product, and not on Wilmar's importation of that product.

29.     Wilmar sent Mr. Hildebrand a check every quarter during the relevant time period. The sum of the combined checks is $65,339.25[8] which is about 15% of $435,589.00.[9]

30.     With three exceptions, every quarterly check was accompanied by an email from Stephen Wimbush, Wilmar's then Chief Financial Officer, which calculated how the amount of the royalty was determined. This included the part number, sales, and the royalty calculation; Wilmar considered this email to be a quarterly report of the gross sales of M980 as required under the Agreement.[10] The three exceptions in which quarterly email reports were not sent with the quarterly payments were for the second, third, and fourth quarter of 2014.[11]

31.     Mr. Hildebrand received each of these checks and, apart from the three exceptions, with Wilmar's calculations.

32.     Mr. Hildebrand cashed each of the checks without objections.

---

[7] In light of the Court's determination of no liability and damages, the exact number of sales on which royalty was paid by Wilmar is irrelevant.
[8] Trial Ex. A-4, A-9, A-15.
[9] $435,589.00 x .15 = $65,338.35. The difference arises because payments were calculated quarterly, based on the gross sales for that period. (*See* Trial Ex. A-15.)
[10] Trial Ex. A-9.
[11] Second, third, and fourth quarter of 2014 (Trial Ex. A-9).

*Request for Records and Information.*

33.     Aside from the 2011 Confidentiality Agreement, Mr. Hildebrand's written communications with Wilmar are from 2009.[12] Although Mr. Hildebrand testified that he contacted Wilmar during the relevant time period, by telephone and emails, concerning quarterly reports, sales records, and the like relating to the Agreement, he produced no emails. In addition, the Court finds Mr. Hildebrand's testimony concerning these alleged communications unsupported and not credible. Therefore, the Court finds that, during the relevant time period, Mr. Hildebrand did not contact Wilmar to contest the amount paid, the calculations made, the lack of any quarterly report; to inspect or to verify Wilmar's records concerning the sale of products covered under the Agreement; or to provide copies of invoicing from any third party.

## II.     CONCLUSIONS OF LAW

To the extent that any findings of fact are deemed to be conclusions of law, they are incorporated herein by reference as conclusions of law.

### A.  Subject Matter Jurisdiction

This Court has subject matter jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. § 1332. Mr. Hildebrand is an individual and a citizen of the State of Colorado. Wilmar is a Washington corporation with its principal place of business in the State of Washington. In addition, Mr. Hildebrand's filings showed the amount in controversy exceeded the value of $75,000.00.

---

[12] ECF No. 132, 102:15-25.

## B. Breach of Contract

Mr. Hildebrand claims Wilmar breached the Agreement. Wilmar defends by arguing that it substantially performed and that Mr. Hildebrand waived any alleged breach.

In order for Mr. Hildebrand to prevail on his claim for breach of contract, he must establish, by a preponderance of the evidence: (1) the existence of a contract; (2) performance by him or some justification for nonperformance; (3) failure to perform the contract by Wilmar; and (4) resulting damages. *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992). The "performance" required is "substantial performance." *Id.* A defendant substantially performs when "the conditions of the contract have been deviated from in trifling particulars not materially detracting from the benefit the other party would derive from a literal performance, [and the plaintiff] has received substantially the benefit he expected." *Id*. (quotation marks and citation omitted). *See also Monus v. Colo. Baseball 1993, Inc.*, 103 F.3d 145 (10th Cir. 1996) (same) (applying Colorado law); *McDonald v. Zions First Nat'l Bank, N.A.*, 348 P.3d 957, 965 (Colo. App. 2015) ("A party has substantially performed when the other party has substantially received the expected benefit of the contract." (quotation marks and citation omitted)).

"Waiver is the intentional relinquishment of a known right or privilege.…A waiver may be explicit, as when a party orally or in writing abandons an existing right or privilege; or it may be implied, as, for example, when a party engages in conduct which manifests an intent to relinquish the right or privilege, or acts inconsistently with its assertion.…Although an intent to waive a benefit may be implied by conduct, the conduct itself should be free from ambiguity and clearly manifest the intention not to assert the benefit." *Dep't of Health v. Donahue*, 690 P.2d

8

243, 247 (Colo. 1984). The burden is on Wilmar to prove this affirmative defense to Mr. Hildebrand's claim for breach of contract. Colo. Jury Instr., Civil 30:25 (2021).

The Court finds that while Mr. Hildebrand has established there is a contact (the Agreement), he has failed to establish one or more of the other requirements as to the claimed breaches. In addition, the Court also finds that Wilmar has shown that Mr. Hildebrand has waived any breach of the Agreement.

### 1.  Performance by Wilmar and Waiver by Mr. Hildebrand

***Section 2.4.*** Mr. Hildebrand testified that Section 2.4 was never complied with until after this lawsuit was filed. But Section 2.4 required Wilmar to perform upon Mr. Hildebrand's "request [for] copies" of invoicing from third-parties and he did not do so during the relevant time period. Thus, Mr. Hildebrand fails to establish Wilmar did not perform in violation of the Agreement.

***Section 2.8***. The Court has already ruled that this section is unenforceable and, in an order issued concurrently with this FOF, that it would not reconsider this ruling. Accordingly, Mr. Hildebrand cannot establish any breach by Wilmar as to this section.

***Section 2.10.*** Section 2.10 required Wilmar to keep accurate records for the duration of the Agreement and to allow Mr. Hildebrand, or a third-party agent/accountant, to inspect and/or verify these records. Although Mr. Hildebrand testified that he verbally requested this of Mr. Wimbush several times, the Court finds Mr. Wimbush's testimony that Mr. Hildebrand made no such requests to be credible. Therefore, the Court finds Mr. Hildebrand fails to establish Wilmar breached this section.

To the extent Mr. Hildebrand relies on the Confidentiality Agreement to support that he did make requests for information, the Court is not persuaded. That agreement was entered into in February 2011. At most, it shows that Mr. Hildebrand made requests for information *prior* to February 2011. The reach of any breach here starts in December 2012; therefore, the question is whether Mr. Hildebrand make requests to inspect or verify Wilmar's accounting records on or after December 10, 2012. The Court finds Mr. Hildebrand fails to meet his burden of showing he did so.

***Section 2.9.*** Section 2.9 required quarterly payments to be accompanied with a report of gross sales of the covered product, i.e., the M980. There is no dispute that Wilmar paid Mr. Hildebrand quarterly. The dispute is whether such payments were accompanied by a report of gross sales of the socket sets for the quarter. Mr. Hildebrand testified that he never received any quarterly reports, including the emails which Wilmar considered to be quarterly reports.[13] On this issue, the Court credits Mr. Wimbush's testimony that he prepared the calculations for the royalty due in an email and that, except for three instances, those calculations were sent to Mr. Hildebrand. As Mr. Hildebrand did not challenge that the emails, if sent, were insufficient to constitute quarterly reports, the Court finds Wilmar performed as required under Section 2.9 in each instance where the emails were sent.

As to the three exceptions where email reports were not sent, Wilmar contends that it nonetheless substantially performed because the benefit Mr. Hildebrand bargained for was the receipt of the 15% quarterly royalty check. In addition, Wilmar argues that if there was any

---

[13] ECF No. 132, 34:1-8, 72:2-3.

breach of the Agreement, Mr. Hildebrand's failure to file suit until December 10, 2018 constitutes a waiver of any breach. The Court agrees.

First, Wilmar substantially performed. Wilmar's failure to provide three quarterly reports did not deprive Mr. Hildebrand the benefit of what was bargained for. As set forth below, Wilmar paid what was owed under the Agreement. Thus, Wilmar's failure to provide these three reports did not detract from the benefit Mr. Hildebrand would derive from a literal performance. Moreover, Mr. Hildebrand waived any right to relief on Wilmar's failure in 2014 to provide three email reports. Despite not receiving these email reports, Mr. Hildebrand continued to thereafter accept and cash the subsequent quarterly checks without complaining or taking any action to enforce his rights to quarterly reports until this action was filed in December 2018.

***Sections 2.1 and 2.7.*** Wilmar paid Mr. Hildebrand an ongoing royalty of 15% of the "Gross Selling Price" of the covered product (M980) sold until September 20, 2015, the expiration date of the '981 Patent. Mr. Hildebrand essentially raises three arguments as to why the evidence shows Wilmar shortchanged Mr. Hildebrand, none of which the Court finds persuasive.

First, Mr. Hildebrand argues that Wilmar's documents[14] show that it *purchased* about 94,000 socket sets during the relevant time period but only paid him for approximately 81,000 socket sets. Even if that is true, Wilmar's obligation to pay was based on the *sales* of the socket sets.

Next, Mr. Hildebrand contends that Wilmar's documents contain no invoices showing purchases from September 2014 until March of 2015, leading to the inference that Wilmar's

---

[14] These documents are the "Chinese invoices" which show Wilmar's purchases of socket sets from companies in Taiwan and Hong Kong. (Trial Ex. 1.)

documents are incorrect and incomplete. Wilmar offered scant evidence in response, such as that there may have been a lag between orders because it had enough product on hand or that Chinese New Year occurred during this period where many Asian companies were closed. Nonetheless, the Court finds the fact that no *purchase* invoices were provided for several months is insufficient to infer that Wilmar's purchase records are incomplete. And, further, even if it did support such an inference, it is insufficient to then infer that Wilmar's *sales* records were also incomplete. On the contrary, Wilmar's sales records show no months where there were no sales recorded.[15] To go where Mr. Hildebrand wishes to lead would require the Court to infer that because the purchase invoices Wilmar provided were allegedly incomplete, the sales information provided by Wilmar must also be incomplete. The Court finds that the evidence provided, as a whole, fails to support such an inference and that it would require speculation to reach such a conclusion.

Finally, Mr. Hildebrand asserts that Wilmar paid royalties for sockets numbered M980 but not for sockets which were privately labeled under different part numbers, i.e., same product with a different part number. While Mr. Hildebrand presented no competent evidence that privately labeled sockets contained a different SKU number, Wilmar presented testimony, which the Court credits, that all covered sockets were labeled with the M980 SKU number. Thus, Mr. Hildebrand's unsupported assertion fails to show a breach of these Sections.

### 2. Damages

As stated, Mr. Hildebrand fails to show that Wilmar did not substantially perform in accordance with the Agreement. In addition, Mr. Hildebrand fails to establish any damages.

---

[15] Trial Ex. A-9.

Specifically, Mr. Hildebrand fails to establish that Wilmar did not pay him his 15% quarterly royalty on gross sales of the covered socket sets. And, even assuming that Wilmar's failure to provide three email reports for three quarters of 2014 constitutes a breach of Section 2.9, Mr. Hildebrand fails to show any resulting damages due to such breach. Accordingly, Mr. Hildebrand has not established his claim for breach of contract.

### C. Accounting

"The function of an accounting is to determine whether the custodian has properly maintained the account and, if not, to adjust the current account to reflect what is proper." *Buder v. Sartore*, 774 P.2d 1383, 1390 (Colo. 1989). An accounting claim is generally equitable in nature; however, it may be "a means by which to arrive at an accurate calculation of compensatory damages" owed by a defendant to a plaintiff. *Virdanco, Inc. v. MTS Int'l*, 820 P.2d 352, 354 (Colo. App. 1991). *See Andrikopoulos v. Broadmoor Mgmt. Co.*, 670 P.2d 435, 440 (Colo. App. 1983) ("Although an accounting is an extraordinary remedy, it may be ordered if the plaintiff is unable to determine how much, if any, money is due him from another." (quotation marks, brackets, and citation omitted)). Because Mr. Hildebrand fails to establish his claim for breach of contract, his claim for an accounting also fails.

### D. Other Matters

Mr. Hildebrand raised other issues and arguments during trial. The Court finds none of them supports granting Mr. Hildebrand relief on the claims made. For example, Mr. Hildebrand discussed discovery difficulties he had with Wilmar – but Mr. Hildebrand had ample opportunity to resolve any discovery disputes during the pendency of this case and fails to show any disputes would establish his claims. Mr. Hildebrand also made a number of arguments concerning

dismissal of and the denial of leave to amend in the Second Patent Action. Whether leave to amend should or should not have been granted in the Second Patent Action, however, is not at issue before this Court. Moreover, to the extent that Mr. Hildebrand argues that patent infringement is at issue in this case because it was tried by express or implied consent, as set forth in the Order Denying Motions to Amend issued concurrently with this FOF, the Court finds otherwise. As Wilmar argued during trial, the only claim to be heard was for breach of contract (and, relatedly, an accounting) and no other. And the Court made clear there was no patent claim before it.[16] Accordingly, whether there was any alleged patent infringement was not at issue at trial.

### III.  ORDER

Mr. Hildebrand voiced concerns and beliefs about Wilmar's alleged failure to perform under the Agreement but the evidence before the Court does not support such concerns and beliefs. Accordingly, based on the foregoing, the Court **FINDS** and **ORDERS** as follows:

(1) That on Plaintiff David L. Hildebrand's Claim for Breach of Contract – the Court finds in favor of Defendant and against Plaintiff;

(2) That on Plaintiff David L. Hildebrand's Claim for An Accounting – the Court finds in favor of Defendant and against Plaintiff;

(3) That Defendant is awarded costs and shall within 14 days of the date of this Order file a bill of costs, in accordance with the procedures under Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1, which shall be taxed by the Clerk of the Court;

(4) That the Clerk of the Court shall enter JUDGMENT in favor of Defendant and

---

[16] ECF No. 132, 118:6-11.

against Plaintiff; and

(5) That the Clerk of the Court shall close this case.

DATED this 10th day of September, 2021.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge